## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **PANNEL PARTNERSHIP, LP,** | § | **CASE NO. 18-35523** |
| | § | **(CHAPTER 11)** |
| **DEBTOR.** | § | |

## DEBTOR'S CORRECTED COMBINED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

This Corrected Combined Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of Pannel Partnership, L.P. ("Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN.  IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE].  THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: PRESTON T. TOWBER, TOWBER LAW FIRM, PLLC, 1111 HEIGHTS BLVD., HOUSTON, TEXAS 77008**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [HEARING DATE/TIME] IN COURTROOM No. 600 AT THE UNITED STATES COURTHOUSE, 515 RUSK, 6TH FLOOR, HOUSTON, TEXAS 77002**

Your rights may be affected by this Corrected Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

Dated:  February 28, 2019

Respectfully submitted,

By:   <u>/s/ Preston T. Towber</u>
      Preston T. Towber
      **THE TOWBER LAW FIRM PLLC**

State Bar No. 20152600
1111 Heights Blvd
Houston, Texas 77008
(832) 485-3555 (telephone)
email: preston@towberlaw.com
**ATTORNEYS FOR DEBTOR IN POSSESSION**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from income generated by the real property that the Debtor owns. If the income is insufficient for any reason, Debtor shall market and sell or refinance the Property and shall distribute the net proceeds from any sale to the creditors who hold Allowed Claims in this Case. Debtor anticipates it would obtain sufficient funds from a sale or refinance of the Property to pay all Allowed Claims under the Plan the full amounts set forth in this Plan.

This Plan provides for eight classes:  six classes of secured claims and two classes of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan believes will be one hundred percent of their Allowed Claims.  This Plan provides for the payment of secured claims in full.

All creditors should refer to Articles 2 of this Plan for information regarding the precise treatment of their claim and the disclosures set forth herein which provide more detailed information regarding this Plan and the rights of creditors and equity security holders.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE 1
## BACKGROUND OF THE DEBTOR

**1.1.**          **Filing of the Debtor's Chapter 11 Case.**

On October 1, 2018, the Debtor filed a voluntary petition for relief under the Bankruptcy Code.  The Chapter 11 case is pending in the Bankruptcy Court in the Southern District of Texas, Houston Division.

**1.2.**          **Nature of the Debtor's Business.**

The Debtor owns approximately 13 acres of real property in Harris County, Texas (the "Property"), which is currently leased to an entity owned by the previous owner of the Debtor, Xxcell Transport, Inc. Xxcell was paying reduced rent but failed to pay rent since January 2019. Xxcell has agreed to vacate the Property. Until the Effective Date, Mega-Tran, LLC, an entity controlled by John Cruise, will commence paying $18,000 a month to occupy the Property. The last appraisal on the Property valued the Property at over $4 million.

**1.3.**          **Legal Structure and Ownership.**

The Debtor is a Texas limited partnership. The general partner of the Debtor is Pannel Investments, Inc. The sole limited partner is Askani, LLC. Askani is an entity owned 100% by John Cruise, who is also the president of the general partner of the Debtor.

**1.4.**          **Debtor's Assets.**

The Debtor owns the real estate last appraised for over $4 million. The only other asset is Debtor's claim against the tenant, Xxcell Transport, Inc. for over $500,000 for unpaid rent and other charges under its lease with XXcell.

**1.5.**          **Debtor's Liabilities.**

The Debtor's Property is secured by 2 Deeds of Trust. The first lien is in favor of NRE Investment Group, LLC ("NRE"), in the approximate amount of $838,032. The second lien is in favor of the Small Business Administration ("SBA"), in the approximate amount of $547,204. The next lien is based on a mechanic's and materialmen's lien in favor of Curry Excavation & Site Work, Inc, in the approximate amount of $328,552.80. The next lien on the Property is based on an Abstract of Judgment filed by Bouman Krauss, in the approximate amount of $7,458.12.

In addition, there are secured tax liens against the Property by Sheldon ISD in the approximate amount of $83.123.87; Harris County, et al., in the approximate amount of $38,000.00.

The timely filed noninsider unsecured creditor of the Debtor consists of  one creditor, Baytex Logistics, LLC, in the amount of $32,825.00, which the Debtor disputes as a claim upon which the Debtor is liable. The insider claim of Askani, LLC in the amount of

3

$204,717.98, will be paid only after all timely unsecured creditors are paid in full under the Plan.

**1.6.**         **Current and Historical Financial Conditions.**

Prior to the bankruptcy filing, Debtor's tenant was not paying rent, which is why there is such a large receivable owing the Debtor by the tenant. Since the bankruptcy filing, the Debtor had agreed to allow the tenant to pay reduced rent of $14,500 for November and December 2018 and January, 2019. The tenant was supposed to resume full monthly payments under Lease starting February 2019. Tenant did not pay the January or February 2019 rent. Due to this, Tenant has agreed to move out by March 31, 2019. Debtor will preserve all claims against Tenant but is hopeful Tenant will move out peaceably to avoid the expense of an eviction. Debtor has found a new tenant Mega-Tran, LLC (an entity controlled by John Cruise) who will lease property commencing March 15, 2019, and will pay monthly rent of $18,000 a month until the Effective Date. On the Effective Date, Mega-Tran LLC will enter into a new Lease (to mitigate the Lease damages caused by Xxcell Transport's failure to honor its obligations under its Lease), which will be in an amount sufficient to make all payments under the Debtor's Plan, which Debtor estimates to be $18,000 a month.

Copies of the Debtor's Monthly Operating Report are on file with the Court and are attached hereto as Exhibit "A".

**1.7.**         **Events Leading to the Filing of the Bankruptcy Case.**

The Debtor's lender, NRE posted the property for a October 2, 2018 foreclosure sale due to a non-payment default. Debtor filed this case to preserve the equity in the Property.

**1.8.**         **Significant Events During the Bankruptcy Case.**

The following significant events took place during the case:

- Debtor commenced making adequate protection payments to NRE on January, 2019 and is holding checks payable to the SBA for January and February 2019 due to the government shutdown. Debtor intends to make these monthly adequate protection payments until a plan is confirmed.
- Preston T. Towber of the Towber Law Firm PLLC was approved as general chapter 11 counsel to the Debtor. The Debtor may hire a real estate broker to market the Property for sale.
- The tenant made 2 reduced rent payments of $14,500 and then ceased paying rent. Tenant has agreed to move out by March 31, 2019. Debtor will preserve all claims against Tenant but is hopeful Tenant will move out peaceably to avoid the expense of an eviction. Debtor has found a new tenant Mega-Tran, LLC (an entity controlled by John Cruise) who will lease property commencing March 15, 2019, and will pay monthly rent of $18,000 a month until the Effective Date. On the Effective Date, Mega-Tran LLC will enter into a new  Lease (to mitigate the Lease damages caused by Xxcell Transport's failure to honor its obligations under its Lease), which will be in an amount sufficient to make all payments under the Debtor's Plan, which Debtor estimates to be $18,000 a month.

4

- Debtor received a letter of intent for purchase of the Property, which if closes and funds, would pay all creditors of the bankruptcy estate with Allowed Claims.

**1.9.**                                **Projected Recovery of Avoidable Transfers**

The only claim the Debtor has at this time is the claim for unpaid rent against the Tenant. Debtor will be evaluating whether to pursue this claim in light of the financial difficulties of the Tenant.

**ARTICLE 2**
**THE PLAN**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**2.1**.    **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by

the Debtor and the Administrative Claimant.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.      If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.      Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | N/A | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | 2019 taxes not due until Jan 31, 2020 | Paid in full on or prior to their due date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | N/A | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Professional fees, as approved by the Bankruptcy Court | Estimated at $25,000 (unpaid) | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |

6

| | | |
|---|---|---|
| Clerk's Office fees | N/A | Paid in full on the Effective Date. |
| Other Administrative Expenses | N/A | Paid in full on the Effective Date or according to separate written agreement. |
| United States Trustee Fees[1] | $325 | Paid in full on the Effective Date. |
| **TOTAL** | $25,325.00 | |

> B.      Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | | | Pmt Interval = [Monthly] payment = Begin Date = End Date = Interest Rate % = Total Payment = $ |
| None | | | Pmt Interval = [Monthly] payment = Begin Date = End Date = Interest Rate % = Total Payment = $ |

> **2.2      Classes of Claims and Equity Interests.**

---

[1] All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*: NRE Investments, LLC<br><br>Collateral description =  All real property of Debtor<br><br>Allowed Secured Amount = $838,032.24<br><br>Priority of lien = First lien after real estate taxes | No | Impaired | [Monthly Pmt.] = $5,394.93<br><br>Pmts Begin      =May 1, 2019<br><br>Pmts End    May 1, 2033 (original maturity date)<br><br>[Balloon Pmt]  = not contemplated at this time<br><br>Interest rate 7.35% =<br><br>Retain lien until paid in full.<br><br>If Property is sold, will be paid in full with proceeds |

| 2 | *Secured claim of*: Small Business Administration <br><br> Collateral description =  All real property of Debtor <br><br> Allowed Secured Amount = $547,204.00 <br><br> Priority of lien = Second lien after real estate taxes | **No** | Impaired | Monthly Pmt  = $5,270.57 <br><br> Pmts Begin     = May 1, 2019 <br><br> Pmts End        = July 1, 2028(original maturity date) <br><br> [Balloon pmt] = not contemplated at this time <br><br> Interest rate 5.35 % <br><br> Retain lien until paid in full <br><br>  If Property is sold, will be paid in full with proceeds |

| 3 | *Secured claim of*: Curry Excavation & Site Work, Inc. <br><br> Collateral description =  All real property of Debtor <br><br> Allowed Secured Amount = $338,409.40 <br><br> Priority of lien = Third lien after real estate taxes | **No** | Impaired | Monthly Pmt  = $4,028.68 <br><br> Pmts Begin     = May 1, 2019 <br><br> Pmts End        =May 1, 2026 <br><br> [Balloon pmt] =No <br><br> Interest rate 3 % <br><br> Retain lien until paid in full <br><br> If Property is sold, will be paid in full with proceeds |

9

| 4 | *Secured claim of*: Bouman Kraus<br><br>Collateral description = All real property of Debtor<br><br>Allowed Secured Amount = $7,458.12<br><br>Priority of lien = Fourth lien after real estate taxes | **No** | Impaired | Monthly Pmt = $91.45<br><br>Pmts Begin = May 1, 2019<br><br>Pmts End = May 1, 2026<br><br>[Balloon pmt] = No<br><br>Interest rate 3 %<br><br>Retain lien until paid in full<br><br>If Property is sold, will be paid in full with proceeds |
| 5 | *Secured claim of*: Sheldon Independent School District<br><br>Collateral description = All real property of Debtor<br><br>Allowed Secured Amount = $83,123.87<br><br>Priority of lien = First lien for real property taxes | **No** | Impaired | Monthly Pmt = $1551.65<br><br>Pmts Begin = May 1, 2019<br><br>Pmts End = May 1, 2024<br><br>[Balloon pmt] =<br><br>Interest rate 12 %<br><br>Retain lien until paid in full<br><br>If Property is sold, will be paid in full with proceeds |

| 6 | *Secured claim of*:<br>Harris County, et al<br><br>Collateral description =  All real property of Debtor<br><br>Allowed Secured Amount = $38,000.00<br><br>Priority of lien = First lien for real property taxes | **No** | Impaired | Monthly Pmt   = $709.34<br><br>Pmts Begin     = May 1, 2019<br><br>Pmts End       =May 1, 2024<br><br>[Balloon pmt] = No<br><br>Interest rate 12 %<br><br>Retain lien until paid in full<br><br> If Property is sold, will be paid in full with proceeds |

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| **N/A** | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims =  $ | [State whether impaired or unimpaired] | |
| **N/A** | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims = $ | [State whether impaired or unimpaired] | |

C.  Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

11

The following chart identifies the Plan's proposed treatment of Class 7 through 8, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 7 | General Unsecured Class -Noninsider consists of one claim in amount of $32,825.00, which Debtor disputes | Impaired | Monthly Pmt           = 398.59<br>Pmts Begin    = May 1, 2019<br><br>Pmts End        =May 1, 2024<br><br>[Balloon pmt] = No<br><br>Interest rate %    2%<br>Estimated   percent of claim paid  100% |

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 8 | General Unsecured Class -Insider claim of Askani, LLC | Impaired | To be paid only after all creditors are paid in full out of sales proceeds or refinance proceeds<br>Estimated   percent of claim paid  100% |

D.        Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 9 | Equity Interest holders | Impaired | **Retain equity and be paid any excess from sales proceeds after all creditors paid in full** |

**2.3        Allowance and Disallowance of Claims-Disputed Claims**

A.        Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed

filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

       B.    <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

       C.    <u>Settlement of Disputed Claims</u>. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

       D.    <u>Objection to Claims</u>.  The Debtor may object to the amount or validity of any Claim within 90 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim.

## 2.4   Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

[ x ]  Assumption of Executory Contracts and Leases.

Five(5) business days before the confirmation hearing, Debtor shall file a list of executory leases it will either assume or reject. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  The Debtor, as Landlord under the Lease, is not in default thereunder so there is nothing to cure.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption prior to the confirmation hearing, unless the Bankruptcy Court has set an earlier time.

  Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is Thirty (30) days from the date of rejection or the order confirming the Plan, whichever is earlier**.  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### 2.5. __Means for Implementation of the Plan.__

The Plan will be implemented from the income from rent paid by the new tenant, Mega-Tran, LLC. If the rental income is insufficient, Debtor will either market and sell the Property or refinance the debt on the Property and pay all creditors from the sale proceeds

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

As provided in this Corrected Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, by the Debtor or any successor to the Debtor. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor or any successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

### 2.6. __Default Under Plan__

Upon a payment default by Debtor under this Plan, the Creditor shall give the Debtor notice of default and opportunity to cure. If the default is not cured within 20 days from the date of mailing of the notice of default to Debtor and Debtor's counsel, by certified mail and regular mail, the Debtor shall have ninety (90) days to sell the Property or refinance the Property and pay the net proceeds to the Creditors. Debtor anticipates it can pay all creditors in full the amounts due under the Plan from either the sales proceeds or the refinance proceeds. If a sale has not closed and funded within after this ninety (90) day period, the Creditor shall be entitled to exercise its rights and remedies under applicable law. The notice address is:

For Debtor
Pannel Partnership, LP
c/o John Cruise
5821 Southwest Freeway, Suite 550
Houston, Texas 77057


For Debtor's counsel:
Preston T. Towber
Towber Law Firm PLLC
1111 Heights Blvd

Houston, Texas 77008

**2.7**     **Disbursing Agent.**

Distributions to Creditors provided for in this Plan will be made by John Cruise as the President of the general partner of the Debtor.

**2.8**.     **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| John Cruise | President of Pannel Investments, Inc., the general partner of the Debtor | None |

**2.9.**     **Tax Consequences of the Plan.**

Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.

**2.10.**     **Risk Factors/Mitigating Factors.**

The success of this Plan is dependent upon the new tenant paying its rent when due. If that becomes an issue, the success depends upon the Debtor's ability to sell or refinance the Property at a price sufficient to pay all creditors in full.

**ARTICLE 3**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.**     **Ability to Initially Fund Plan**.

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The source will be the new tenant who will pay $18,000 a month. The new tenant is an entity owned by John Cruise.

    **3.2.**    <u>**Ability to Make Future Plan Payments And Operate Without Further Reorganization**</u>.

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit B.  These show that the Debtor will be able to make the Plan payments required under the Plan to pay all creditors in full.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## <u>LIQUIDATION VALUATION.</u>

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  Since holders of Allowed Claims are expected to receive 100% payment of their claims with interest as provided in the Plan, they will receive as much as they would receive in a chapter 7 case. Further, if there is a default under the Plan, the Debtor will endeavor to sell or refinance the Property and will pay all creditors in full the amounts provided in this Plan. A liquidation analysis is attached hereto as Exhibit C.

## ARTICLE 5
## <u>EFFECT OF CONFIRMATION</u>

    5.1    <u>Discharge.</u> On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

    5.2    As provided in section 1141 of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtors and any creditors under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor accepted the Plan.  As provided in section 1141 (b) of the Bankruptcy Code, confirmation of the Debtor's Plan vests all of the property of the estate in the Debtor. After confirmation of the Plan, all property of the Debtor dealt with by the Plan is free and clear of all liens, claims, encumbrances and interests of all entities, including all creditors and equity security holders, except to the extent specifically set forth in this Plan.

    5.3.    The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon and from the petition date, against the Debtor and the Debtor in Possession, or any of their assets of properties. Except as otherwise provided herein, all creditors shall be precluded from asserting against Debtor any other or further claim based upon any act or omission, transaction or other activity of any kind or nature occurring on or prior to the

16

confirmation date.

# ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.2.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.    Modification of Plan.

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**6.8**        **No Prepayment Penalty of Fee**

There shall be no prepayment penalty of fee charged if the amounts owed any Allowed Claim is paid prior to its due date for payments under this Plan.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Corrected Combined Plan and Disclosure Statement:

Exhibit A: Filed Monthly Operating Reports

Exhibit B: 84 Month Projections

Exhibit C: Liquidation Analysis

Exhibit D: Estimated Cash on Hand on Effective Date

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Corrected Combined Plan and Disclosure Statement.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured.  Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you

will receive what the Plan has provided for you if the Plan is confirmed.  Article 2, Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?**  Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2, Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired.  If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to all claim holders for their review, consideration and approval.  The deadline by which ballots must be returned is _____.  Ballots should be mailed to the following address:  Preston T. Tower, Tower Law Firm, PLLC, 1111 Heights Blvd., Houston, Texas 77008.

**How Do I Determine When and How Much I Will Be Paid?**  In Article 2, Section 2.2 , the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.**  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:**  A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5      Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6. Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7. Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8. Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9. Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**9.12. Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Pannel Partnership, LP is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Committee**: Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**9.18. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Corrected Combined Plan and Disclosure Statement.

**9.19. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20. Confirmation Hearing**: The hearing to be held on _____, 2019 to consider confirmation of the Plan.

**9.21. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23. Debtor** and **Debtor-in-Possession**: Pannel Partnership, L.P., the debtor-in-possession in this Chapter 11 Case.

**9.24. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.25. Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.26. Effective Date**: 30 days after the confirmation order becomes final nonappealable order.

**9.27. Equity Interest**: An ownership interest in the Debtor.

**9.28. Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.29. Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30. IRC**: The Internal Revenue Code

**9.31.  Petition Date**: October 1, 2018, the date the chapter 11 petition for relief was filed.

**9.32. Plan**: This Corrected Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

**9.33. Plan Proponent**: The individual or entity that has filed this Corrected Combined Plan and Disclosure Statement.

**9.34. Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.35. Reorganized Debtor**: The Debtor after the Effective Date.

**9.36. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.37. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.38. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

## Article Ten    Conclusion

Pannel Partnership LP has filed this Corrected Combined Plan and Disclosure Statement. Pannel, through the president of its general partner, John Cruise, represents that he believes the information contained in this document to be true and correct in all respects.

Dated:  February 28, 2019

Respectfully submitted,

PANNEL PARTNERSHIP, L.P. through its general partner, Pannel Investments, Inc.

By: John Cruse

Its: President

By:     /s/ Preston T. Towber
        Preston T. Towber
        **THE TOWBER LAW FIRM PLLC**
        State Bar No. 20152600; Fed. ID No. 8214
        1111 Heights Blvd
        Houston, Texas 77008
        (832) 485-3555 (telephone)

        **ATTORNEYS FOR DEBTOR IN POSSESSION**

23